513 So.2d 1253 (1987)
Raymond Leon KOON, Appellant,
v.
STATE of Florida, Appellee.
No. 68132.
Supreme Court of Florida.
August 20, 1987.
Rehearing Denied November 16, 1987.
*1254 James Marion Moorman, Public Defender, and Robert F. Moeller, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., and Katherine V. Blanco, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Raymond Koon appeals his conviction of first-degree murder and sentence of death. We have jurisdiction pursuant to Article V, section 3(b)(1), Florida Constitution, and affirm both the conviction and the sentence.
Ray Koon was initially convicted and sentenced to death for first-degree murder in 1982. Because of an evidentiary error, this Court reversed and remanded for retrial. Koon v. State, 463 So.2d 201 (Fla.), cert. denied, 472 U.S. 1031, 105 S.Ct. 3511, 87 L.Ed.2d 641 (1985). The present appeal is based on events which occurred during Koon's second trial.
Pursuant to information supplied by two witnesses, Joseph Dino and Charles Williams, Ray Koon was arrested and indicted on federal counterfeiting charges in 1979. His trial never took place because by the scheduled trial date, Joseph Dino had been murdered and Charles Williams refused to testify. Ray Koon and his nephew, J.L. Koon, were eventually charged with the murder of Dino. The nephew pled guilty to the charge and subsequently testified against his uncle. According to J.L. Koon, he and Ray had stopped at a country store after a day of drinking, working and hunting. Ray dialed Dino's home and had J.L. use a false name to set up a business meeting with Dino for later that evening. They then drove to Ray's home, put a shotgun in the trunk, and met Dino in the parking lot of a lounge. Ray and Dino became involved in a fistfight in which Dino was severely beaten. The Koons then placed Dino in their vehicle and drove out of town. At one point they stopped near a canal where Ray took the shotgun out and ordered Dino into the trunk. When Dino refused to get into the trunk, the three continued driving across the state at high *1255 rates of speed. When Dino asked if he was going to be killed, Ray said they might rough him up a bit but would not kill him. On a deserted road near Naples, Ray took the shotgun and walked Dino into the woods. J.L. heard a gunshot. When J.L. accosted his uncle by a small lake in which Dino's body was partially submerged, Ray told him not to worry about Dino because he had "watched his head explode" and that dead men couldn't tell any lies. Two other witnesses also testified that Koon told them he had killed Dino.
On appeal, Koon first contends that the trial court erred by failing to conduct an adequate inquiry into the request he made shortly before his retrial to dismiss the assistant public defender and appoint private counsel to represent him. The state points out that the filing of this motion was consistent with Koon's pattern of behavior. One week prior to his first trial, Koon filed a similar motion and had the same assistant public defender replaced by private counsel  who was then subsequently dismissed just prior to closing arguments. Koon had also attacked the competency of his counsel while engaged in federal civil rights proceedings related to Dino's murder. The assistant public defender who was representing Koon was particularly well qualified to do so because he had also done most of the pretrial work connected with preparing for Koon's first trial.
An indigent defendant has an absolute right to counsel, but he does not have a right to have a particular lawyer represent him. Morris v. Slappy, 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). While a defendant has a constitutional right to waive counsel, Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), Koon expressly declared that he had no desire to represent himself. There is nothing in the record to indicate that Koon could have been better served by other counsel. The court made an adequate inquiry into the quality of representation that Koon was receiving, and we find no basis for Koon's argument that he should have been furnished new counsel.
The next point concerns the testimony of a secret service agent that, at a preliminary hearing on the federal counterfeiting charges, the U.S. magistrate stated in Koon's presence that she would have dismissed the charge against him had there been only one witness. Koon argues that the testimony which recited the magistrate's remarks constituted inadmissible hearsay. The trial judge explained that the statement was being admitted, not for its truth, but for the purpose of showing state of mind. Koon correctly points out that the state of mind exception to the hearsay rule, section 90.803(3), Florida Statutes (1985), refers only to the declarant's state of mind and that the magistrate's state of mind was irrelevant to this case. However, the testimony was properly admitted because it was not hearsay in the first place.
Hearsay is a statement, other than one made by a declarant while testifying, offered to prove the truth of the matter asserted in the statement. § 90.801(1)(c), Fla. Stat. (1985). An out-of-court statement is admissible to show knowledge on the part of the listener that the statement was made if such knowledge is relevant to the case. E. Cleary, McCormick on Evidence § 249 (3d ed. 1984); S. Gard, Jones on Evidence § 8.6 (6th ed. 1972). See Heritage Homes of Attleboro, Inc. v. Seekonk Water District, 648 F.2d 761 (1st Cir.), vacated on other grounds, 454 U.S. 807, 102 S.Ct. 81, 70 L.Ed.2d 76 (1981); Freeman v. Metropolitan Life Insurance Co., 468 F. Supp. 1269 (W.D.Va. 1979). Here, the testimony was not offered to prove the truth of the magistrate's statement but rather to show that having heard the statement, Koon could have formed the motive for eliminating one of the two prosecuting witnesses.
Koon also asserts that the court erred in allowing the state to elicit information on cross-examination from a defense witness that the witness felt threatened as a result of conversations with Koon's brother and an investigator from the office of Koon's lawyer. There was no showing that Koon was responsible for such threats. At the outset, we note that the *1256 only ground given for the objection to this testimony was that it was outside the scope of direct examination. It has been held that evidence of threats made against witnesses is inadmissible to prove guilt unless the threats are shown to be attributable to the defendant. Duke v. State, 106 Fla. 205, 142 So. 886 (1932); Jones v. State, 385 So.2d 1042 (Fla. 1st DCA 1980); Coleman v. State, 335 So.2d 364 (Fla. 4th DCA 1976). There is no indication in those cases that the evidence of the threats was introduced except as part of the state's case on direct or redirect examination. Here, however, the state was seeking to impeach the credibility of a defense witness on cross-examination as permitted by section 90.612(2), Florida Statutes (1985). The fact that a witness has been threatened with respect to his testimony may bear on his credibility regardless of who made the threat. Therefore, there was a legitimate basis for the admission of this testimony.
We are compelled to point out, however, that there are circumstances where testimony concerning third-party threats may properly be admissible under a recognized theory of evidence and yet be deemed so prejudicial as to require its exclusion. See State v. Price, 491 So.2d 536 (Fla. 1986). Under the circumstances of this case, we cannot say that such undue prejudice existed. Even if it could be said that the admission of such evidence was error, we consider it harmless in this case. See Duke v. State.
Turnikng to Koon's other arguments relating to the guilt phase of his trial, we reject his contention that the court erred by allowing the state to inquire of a defense witness whether he had called a federal prosecutor an unflattering name. We also find no merit in the contention that Koon's rights were denied by being called to testify before he was ready. In this regard, it should be noted that this trial took place some six years after the actual murder. Prior to the trial, Koon had available a complete record of his previous week-long trial on the same charges. He was present throughout the trial, and when it came time to testify, the court even granted Koon a break of approximately thirty minutes to retrieve his legal papers and prepare himself.
In the sentence phase of the trial, the jury returned a recommendation of death. In following the jury's recommendation, the court found four aggravating circumstances applicable to Koon's sentence:
(1) The defendant was previously convicted of a felony involving the use or threat of violence to the person.
(2) The capital felony was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws.
(3) The capital felony was especially heinous, atrocious, or cruel.
(4) The capital felony was a homicide and was committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification.
In connection with the finding that he had previously been convicted of a felony involving the use or threat of violence to the person, Koon contends that the court erred in considering a presentence investigation (PSI) report which contained certain facts that were disputed by him. However, there is no doubt that such felonies were committed because certified copies of those convictions were introduced by the state as exhibits. At the sentencing hearing, the court stated that it used the PSI report only for information pertaining to prior convictions for violent felonies. The sentencing order relies on the PSI report only to the extent that it detailed the violent acts which gave rise to these convictions. Moreover, practically all of the specific facts disputed by Koon had nothing to do with the recitations in the sentencing order. We reject Koon's argument on this point.
While Koon disputes the court's finding that the murder was committed to hinder or disrupt a lawful governmental function, this conclusion is supported by ample evidence. The federal magistrate stated in Koon's presence that a complaint against him would have been dismissed if there were one less accusatory witness. It was evident that Koon was angry with *1257 Dino for planning to testify against him, because prior to killing him, Koon berated Dino about his upcoming testimony. J.L. Koon also attributed to his uncle the chilling statement, "Dead men can't tell no (sic) lies."
With respect to the determination that the killing was cold, calculated and premeditated without pretense of moral or legal justification, the evidence reflects that Koon lured Dino from his home on the pretext of business by having someone call him using a false name. Koon then obtained a shotgun before meeting with Dino. He then physically beat him up, placed him in the backseat of an automobile, and drove him deep into the Florida wilderness. At this point, he walked Dino down a deserted road at gunpoint and executed him with a single shot to the head. On these facts, the court could properly conclude that the murder was committed with calculated premeditation.
We also find no error in the determination that the killing was heinous, atrocious or cruel. While Dino's end may have been quick rather than lingering, he was subjected to hours of terror before his death. Having left the security of his home for a business meeting, Dino was accosted by a man he had reason to fear. He was beaten to such an extent that part of his ear was torn off. He was then forced into a car and taken at high speed across the state. At one point Dino was ordered into the trunk of the car. He was ultimately marched into a swamp at gunpoint to die. The mental anguish inflicted on Dino during the hours immediately preceding his death is sufficient to support a finding of atrocity. Scott v. State, 494 So.2d 1134 (Fla. 1986).
The court found no circumstances to mitigate the imposition of a death sentence. The court did not err in rejecting as a mitigating circumstance that Koon's mental capacity was diminished due to intoxication. There was testimony that even though he was high, Koon was not drunk at the time of Dino's murder. There was no indication that alcohol impaired his reasoning. On the contrary, the evidence reflected a carefully planned confrontation with the victim in order to kill him. We also find no error in the court's conclusion that Koon's character evidence was insufficient to constitute a mitigating circumstance.
Contrary to Koon's argument, we do not read the trial judge's comments as indicating that he was under the impression that he had no alternative but to follow the jury's recommendation of death. Finally, the passing reference to Koon's lack of remorse at the end of the sentencing order cannot be error because this factor was not considered in determining the aggravating circumstances. Suarez v. State, 481 So.2d 1201 (Fla. 1985), cert. denied, ___ U.S. ___, 106 S.Ct. 2908, 90 L.Ed.2d 994 (1986).
Accordingly, we affirm the conviction and sentence of death imposed by the court. We do, however, set aside the order assessing attorney's fees and costs because the record does not reflect that Koon, an indigent, was given any notice or opportunity to be heard concerning such assessment. The state may seek to reimpose the attorney's fees and costs at a hearing pursuant to the rationale of Jenkins v. State, 444 So.2d 947 (Fla. 1984).
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.